CONCEPCIÓN ROSALY DE COLÓN, Plaintiff and Appellant, *v.* SUN LIFE ASSURANCE COMPANY OF CANADA, Defendant and Appellee.

No. 6490. Argued July 2, 1934.—Decided July 26, 1934.

*F. Zapater* and *R. Cintrón Lastra* for appellant. *Hartzell, Kelley & Hartzell* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

The dismissal of the appeal taken is requested as being frivolous. The complete transcript is before us and the appellee's motion was presented after the appellant had filed her brief. We had also the benefit of an intelligent oral argument of the questions involved by the distinguished attorneys for both parties during the hearing of the motion.

It is alleged in the complaint, in brief, that on April 15, 1929, Manuel Colón and his wife, the plaintiff, entered with the Sun Life Assurance Co. of Canada, the defendant, into a joint dotal insurance policy contract on the lives of both, containing the following stipulation, drafted, as the whole policy, in Spanish:

". . . Benefit. If while this policy is in force trustworthy proof is presented to the company showing that the death of any of the insured persons is due, directly and independently of any other cause, to bodily injuries received before becoming sixty years old, and which injuries may have been caused by external, violent, and accidental means, within ninety days from the date on which such injuries were suffered, the Company will pay, in addition to the insurance sum expressed on the first page of the policy, a sum equal to said insurance sum (excluding the additional bonds) payable at the same time and in the same manner as said insurance sum.—Exceptions: This benefit of twofold compensation does not cover nor include the death . . . if the person is the victim of homicide. . . ."

It is further alleged that the stipulated premiums were paid up to April 26, 1933; that on February 1, 1933, while Colón, the insured person, who had not become sixty years old, was walking by the city of Ponce, he was suddenly, assaulted with malice aforethough from the rear, by Angel Irizarry who fired three shots at him, causing his death few hours later, and that the defendant is willing to pay the plaintiff the insurance sum—three thousand dollars—but refuses to acknowledge him the benefit of the twofold compensation.

The tenth averment of the complaint, copied verbatim, reads:

"That according to the plaintiff's best information and belief, at the time the said policy contract was subscribed by Mr. Manuel Colón Figueroa and the insurance company, namely, The Sun Life Assurance Company of Canada, the latter, through its agent Mr. José Casanova, who was a duly authorized agent of the said company, told said Mr. Manuel Colón Figueroa, that in case the death

were due to murder, his beneficiaries would be entitled to receive the benefits of the twofold compensation clause transcribed in the fourth averment of this complaint, and which is a part of the said insurance contract on the life of said Mr. Manuel Colón Figueroa and his wife, the plaintiff herein, with the defendant company; and we continue to allege that said Mr. Manuel Colón Figueroa subscribed under such belief the so many times referred to insurance contract on his life and his wife's under the indicated policy number 976261.''

The complaint ends with the prayer that judgment be rendered for six thousand dollars, together with costs and attorney's fees.

The defendant moved that all of the tenth averment be stricken out and the court so decreed. The plaintiff took an exception.

A duly amended complaint was filed and the defendant filed a demurrer thereto based on want of facts sufficient to constitute a cause of action as to the double indemnity.

The demurrer was sustained and, as the complaint was not open to amendment, the court proceeded to render judgment ordering the defendant to pay the plaintiff the insurance sum of three thousand dollars and exempting it from paying the double indemnity, without special imposition of costs.

The plaintiff appealed. While the appeal was being perfected, both parties agreed that the judgment be paid with regard to the three thousand dollars, the appeal subsisting as to the determination of whether or not the double indemnity was provident.

The appellant maintains in her brief that the court erred, in directing the tenth averment to be stricken out, and in deciding that the plaintiff is not entitled to the twofold compensation.

The first error assigned does not exist. We agree with the appellant in that the rule contained in Section 25 of the

Law of Evidence, 387 of the Code of Civil Procedure, 1933 ed., has exceptions. The rule says:

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore, there can be between the parties and their representatives, successors in interest, no evidence of the terms of the agreements other than the contents of the writing, except in the following cases:"

And the law itself points out the exceptions which the jurisprudence has endeavored to fix to its full extent. See, among others, the cases of *De la Rosa* v. *Heirs of Quevedo,* 47 P.R.R. 165, and *Marxuach* v. *Acosta,* 39 P.R.R. 872.

We also agree with the appellant in that the state of the jurisprudence on the subject has been well exposed in the following citation from Jones on Evidence, to wit:

"Perhaps the most important exception to the general rule under discussion is that, in actions where written agreements are involved, the consideration stated is generally open to explanation. Thus, in actions on *notes or other contracts,* the defense is frequently interposed that the agreement was without consideration, or that the consideration has failed; and proof sustaining such a defense is admissible, provided it does not in other respects vary the legal effect of the contract. For example, when the consideration stated has failed, another can be proved; if a bill of sale, release or other written instrument fails to state the entire consideration, the same may be shown; so whether the true consideration is greater or less than that stated; and if the consideration stated is in ambiguous terms, or if it is clear that the whole consideration is not stated, the true consideration may be proved, and it is now the rule generally adopted that the *real consideration* may be proved although different from that expressed; for example, where there is merely a nominal consideration expressed. The fact that the consideration *dehors* the instrument rests in contingency will not preclude its admissibility, as, for instance, when one made a contract to pay off for another a debt due to a third person, taking a conveyance of the debtor's land, which was to be sold and the surplus (if any) paid to the debtor, and the conveyance showed only the amount of the debt as the consideration, the debtor was allowed to give evidence of the contingency. When the instrument itself expresses that there is other consideration ,evidence of it is, of course admissible

as well, on the ground of explaining the ambiguity. When the consideration for different properties is expressed in a lump sum, parol evidence is admissible to show the division. Thus under a written contract for the purchase of a business and the stock of a corporation for an aggregate sum, parol evidence is competent to show that a cash payment made was wholly for the business, and that the sole consideration for the balance of the purchase money taken in notes was the stock of the corporation. The effect of such proof is the same as if the separate consideration were recited in the contract, making it, not an entire, but a separate contract of purchase. But if the parol *testimony proposed tends to change the contract* itself, instead of the consideration, *it should be rejected.* A party cannot, under the guise of varying the consideration, ingraft upon the agreement by parol new terms and covenants.'' Vol. III, pp. 284, 288. ·

But we cannot agree that those principles, when applied to this case, may lead us to conclude that the decision of the district court ordering the striking out involved, were erroneous.

Said decision not only finds support in the general rule contained in Section 25 of the Law of Evidence, for the stricken out averment is clearly not comprised in any of the exceptions, but also and expressly in Sections 300, 301, 302, 303, and 304 of the Code of Commerce, 1932 Ed., 1693 and 1694 of the Civil Code, 1930 Ed., and 173 of the Insurance Law of Porto Rico, Code of Commerce, 1932 Ed., p. 582, of which we shall only transcribe Sections 334 of the Code of Commerce and 173 of the Insurance Law which read:

"Section 334.—Life insurance shall only be understood to embrace the risks which are especially enumerated in detail in the policy.''

"Section 173.—Every policy or other insurance contract issued by a company or person transacting insurance in Porto Rico, shall contain in English and Spanish each and all the terms of the contract with the insured, and no condition shall be valid unless stated as aforesaid in the policy or insurance contract.''

We shall now examine the second and last of the questions involved. The appellant maintains that her case is not com-

prised in the exception "if the person is the victim of homicide," because her husband was murdered and murder and manslaugther (*homicidio*) are different crimes.

The study which the appellant makes in her brief reveals an arduous and intelligent effort in support of her thesis, but does not convince us that reason is with her.

Manslaugther (*homicidio*) and murder are indeed different crimes in our Penal Code and they were so in the old one as regards the seriousness of the criminal act and the penalty thereof, but in both the violent death of a human is caused by another, which always constitutes, strictly speaking, a homicide, from the Latin *homicidium*, from *homo*, man, and *caedes*, to kill.

"Homicide," says Escriche in his *Diccionario de Legislación y Jurisprudencia*, Vol. 3, p. 148, "is the act of depriving one of his life, or the killing of a man by another; 'man killing (*matamiento de ome*)', says the 7th *Partida*, 8th little, 1st law. This is the greatest of the crimes that can be committed against a member of society, because he is divested from existence, which is the first and greatest benefit he has received from nature. The word homicide has been formed by abbreviation of the Latin words *hominis caedes*."

And then he adds:

"At present, according to Section 419 of the Penal Code of 1870, the person who kills another, in the absence of any of the circumstances of wilfullness, price or remunerative promise, flood, arson or poison, known premeditation, or cruelty (in which cases homicide is punished as murder: S: *Murder*) shall be punished with temporary imprisonment."

Thus where the generic word "homicide" is used, as it was used in the policy in the instant case, both the crime of murder as well as that simply classed as manslaugther are embraced therein.

" 'Murder' ", says the *Enciclopedia Jurídica Española*, volume 3, p. 658, "is a species of the genus 'homicide,' characterized by the means attending the commission."

And in English it is the same. Quite a number of cases so holding are cited in the motion. It will suffice to refer to one, *People* v. *Mar Gin Suie,* 11 Cal. App. 42, 103 Pac. 951, 958, in which it was held:

"The killing of a human being by another under any circumstances constitutes a homicide, as an etymological analysis of the word itself will plainly show, but whether a homicide is murder or any other like crime depends, necessarily, on the circumstances under which it is committed. Our Penal Code expressly sets forth the circumstances and conditions which would make a homicide a murder, and, furthermore, it prescribes the conditions upon which it would be either excusable or justifiable."

The errors assigned being thus assayed, we agree that they are not well grounded. They are frivolous, and the appellee's motion must therefore be granted, and the appeal, in consequence thereof, dismissed.